[Cite as *State v. Brown*, 2010-Ohio-4546.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# MARION COUNTY

STATE OF OHIO,                                      CASE NO. 9-10-12

   PLAINTIFF-APPELLEE,

 v.

JEFFREY E. BROWN,                                  **O P I N I O N**

   DEFENDANT-APPELLANT.

**Appeal from Marion County Municipal Court**
**Trial Court No. TRD 0910285**

**Judgment Affirmed**

**Date of Decision:  September 27, 2010**

**APPEARANCES:**

   *Jeffrey E. Brown,* **Appellant**

   *Jason D. Warner,* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant, Jeffrey E. Brown, appeals the judgment of the Marion Municipal Court convicting him of failure to wear a safety belt pursuant to R.C. 4513.263, and ordering him to pay a fine of $30 plus costs. On appeal, Brown argues that the trial court erred by denying his motion to dismiss the citation on the basis that R.C. 4513.263 was unconstitutional; that the State failed to present sufficient evidence to support his conviction; that his conviction was against the manifest weight of the evidence; and, that the trial court failed to conduct a "meaningful review" of his motion. Based upon the following, we affirm the judgment of the trial court.

{¶2} In November 2009, a law enforcement officer cited Brown for failure to wear a safety belt in violation of R.C. 4513.263, a minor misdemeanor, after executing a traffic stop of his vehicle. Thereafter, Brown entered a not guilty plea to the citation.

{¶3} In December 2009, Brown, acting pro se, moved the trial court to dismiss the citation on the basis that R.C. 4513.263 was unconstitutional pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, and the "comparable" provisions of the Ohio Constitution, because it violated his right to self-determination and privacy, was wholly arbitrary, and was unsupported by any rational basis.

{¶4} In January 2010, following a hearing, the trial court overruled Brown's motion to dismiss, found him guilty of failure to wear a safety belt, and ordered him to pay a $30 fine plus costs.

{¶5} It is from the judgment overruling his motion to dismiss that Brown appeals, presenting the following pro se assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING THE DEFENDANTS [SIC] MOTION TO DISMISS.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AS OPPOSING COUNSEL FAILED TO ESTABLISH A PROPER LEGAL FRAMEWORK FROM WHICH SUCH A DECISION COULD BE MADE. THAT [SIC] THE DECISION REACHED BY THE TRIAL COURT WAS UNSUPPORTED AND CONTRARY TO THE WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AS IT FAILED TO CONDUCT A MEANINGFUL REVIEW.**

{¶6} Due to the nature of Brown's arguments, we elect to discuss his second and third assignments of error together.

*Assignment of Error No. I*

{¶7} In his first assignment of error, Brown contends that the trial court abused its discretion by overruling his motion to dismiss. Specifically, he argues

that R.C. 4513.263 is unconstitutional pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and the "comparable" provisions of the Ohio Constitution, because it deprives citizens of their rights to make medical decisions for themselves; because there is no rational basis for the safety belt requirement; because the statute is arbitrary and selectively enforced; and, because the statute is overbroad. The State and Amicus Curiae, the Ohio Attorney General, respond to Brown's first assignment of error that other courts in Ohio have found that the safety belt statute is constitutional; that no court in the nation has found a state's safety belt statute to be unconstitutional; that driving a car is a privilege and not a fundamental right; and, that the safety belt statute is constitutional because it is rationally related to a valid legislative purpose and is a constitutional exercise of the state's power.

{¶8} Initially, we note that the State points out that Brown failed to provide transcripts of the proceedings to this Court and argues that, consequently, we cannot consider his arguments. App.R. 9 requires an appellant to provide the appellate court with transcripts of the proceedings that are necessary to review the merits of his appeal. App.R. 9(B). However, a determination of the constitutionality of a statute is a question of law. See *State v. Stallings*, 150 Ohio App.3d 5, 2002-Ohio-5942, ¶6; *Akron v. Callaway*, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶23. Questions of law are reviewed de novo, an independent review, without deference to the lower court's decision. *Ohio Bell Tel. Co. v. Pub. Util.*

*Comm. of Ohio* (1992), 64 Ohio St.3d 145, 147.  Because the only issue before us in Brown's first assignment of error is a question of law, and because Brown set forth his legal argument in his motion to dismiss, which is part of the record, we find that the transcripts of the proceeding are unnecessary for our review of this argument.  Accordingly, we will address Brown's first assignment of error.

{¶9} "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."  *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, paragraph one of the syllabus.  "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution."  *Xenia v. Schmidt* (1920), 101 Ohio St. 437, paragraph two of the syllabus.

{¶10} A statute may be challenged on constitutional grounds in two ways: (1) that the statute is unconstitutional on its face, or (2) that it is unconstitutional as applied to the facts of the case.  *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶37, citing *Belden v. Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, paragraph four of the syllabus.  To mount a successful facial challenge, the party challenging the statute must demonstrate that there is no set of facts or circumstances under which the statute can be upheld.  Id., citing *United States v.*

*Salerno* (1987), 481 U.S. 739, 745. Where it is claimed that a statute is unconstitutional as applied, the challenger must present clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts. Id. at ¶38, citing *Belden*, 143 Ohio St. 329, at paragraph six of the syllabus.

{¶11} Here, Brown has argued that R.C. 4513.263 is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution, as well as the "comparable" provision of the Ohio Constitution. We interpret this language to mean Section 1, Article I of the Ohio Constitution. Additionally, it appears that Brown is arguing that the statute is facially invalid.

{¶12} The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that:

> **All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

{¶13} Additionally, Section 1, Article I of the Ohio Constitution provides, in pertinent part:

> **All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.**

{¶14} Despite these guarantees, however, the Supreme Court of Ohio has recognized that, "'[u]nder the decisions of the United States, and of this state, it is held that the inalienable rights given to the citizens of this state in Article I of the Ohio Constitution, and the equal protection and benefit guaranteed them in that document as well as in the federal Constitution, do not render the citizens immune from the operation of the police power.'" *State v. Johnson* (July 7, 2000), 4th Dist. No. 99CA29, 2000 WL 1005804, quoting *Holsman v. Thomas* (1925), 112 Ohio St. 397, 404. Additionally, the Supreme Court has held that operating a vehicle is a privilege, and not a fundamental right. *Maumee v. Gabriel* (1988), 35 Ohio St.3d 60, 62-63.

{¶15} Multiple courts in Ohio have examined R.C. 4513.263 and have determined that the statute is a constitutional exercise of the police power and does not violate the Due Process Clause. See *State v. Bigley*, 9th Dist. No. 02CA0017-M, 2002-Ohio-4149, ¶11, fn. 1; *Johnson*, supra; *State v. Bradfield* (August 10, 1990), 6th Dist. No. S-89-33; *State v. Batsch* (1988), 44 Ohio App.3d 81, 82. In *Batsch*, the Eleventh Appellate District examined an argument similar to Brown's and concluded that R.C. 4513.263 was not an unreasonable extension of the police power or in violation of the Due Process Clause. In reaching its conclusion, the Eleventh District reasoned that:

> **the wearing of a seat belt secures a driver in his seat making it easier for him to retain control of his motor vehicle and thus**

**reducing the chances that sudden emergencies on the road may cause him to lose control of his vehicle and collide with other vehicles.**

*Batsch*, 44 Ohio App.3d at 82.  See, also, *State v. Krohn* (Oct. 18, 1996), 11th Dist. No. 96-G-1970, 1996 WL 648735.

{¶16} We concur with the Fourth, Sixth, Ninth, and Eleventh Appellate districts and find that R.C. 4513.263 is constitutional for the reasons set forth in *Batsch*.  In doing so, we find the quotation from the *Batsch* decision set forth above to be particularly persuasive in that it demonstrates that the seat-belt law does not merely implicate the personal freedom and "rights" of the person choosing not to wear the belt, but also impacts the personal safety and welfare of other citizens, drivers, and pedestrians who are placed in harm's way by virtue of the appellant's choice not to wear his own safety belt.  Consequently, we find that the trial court did not err in overruling Brown's motion to dismiss and in convicting him of failure to wear a safety belt.

{¶17}  Accordingly, we overrule Brown's first assignment of error.

*Assignments of Error Nos. II and III*

{¶18} In his second assignment of error, Brown contends that the trial court abused its discretion by overruling his motion to dismiss because the State failed to demonstrate the constitutionality of R.C. 4513.263 by use of any legal authority, making the trial court's decision unsupported by sufficient evidence and against the manifest weight of the evidence.  In his third assignment of error,

Brown contends that the trial court erred and abused its discretion because it failed to conduct a "meaningful review" of his case, as the only response from the bench was the statement "motion denied" and the corresponding notation on the judgment entry.

{¶19} In response to Brown's second and third assignments of error, the State again points out that Brown failed to provide transcripts of the proceedings to this Court, and that, consequently, we cannot consider these assignments of error. As stated in our analysis of Brown's first assignment of error, under App.R. 9(B), the appellant bears the burden of furnishing a record to the appellate court that sufficiently discloses the error of which he complains. See *State v. Deal*, 3d Dist. No. 5-08-15, 2008-Ohio-5408, ¶7. In his second and third assignments of error, Brown has made arguments specifically relating to the hearing on his motion to dismiss. As he has not provided this Court with a transcript of the hearing necessary to resolve these assignments of error, we must presume validity of the lower court's proceedings and affirm. See App.R. 9(B); *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199.

{¶20} Accordingly, we overrule Brown's second and third assignments of error.

{¶21} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jnc**

**ROGERS, J., dissents.**

{¶22} I respectfully dissent from the opinion of the majority.

{¶23} Section 1 of the Fourteenth Amendment to the United States Constitution guarantees that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Additionally, Section 1, Article I of the Ohio Constitution guarantees citizens the inalienable rights of "enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

{¶24} The term "liberty," as used in Section 1, Article I of the Ohio Constitution, has been defined as "'the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare.'"  *Preterm Cleveland v. Voinovich* (1993), 89 Ohio App.3d 684, 691, quoting *Palmer v. Tingle* (1896), 55 Ohio St. 423, 441; see, also, *State v. Betts* (1969), 21 Ohio Misc. 175, 177.

{¶25} In *Betts*, supra, to which Brown refers in his appellate brief, the Franklin County Municipal Court found unconstitutional R.C. 4511.53, which required motorcyclists travelling on a highway to wear a helmet and protective eyewear. The court reasoned that the only discernible risk to the public welfare was that a motorcyclist could be struck on the bare head by an object, lose control of his motorcycle, and become a hazard to other users of the highway, 21 Ohio Misc. at 182-83, and that this risk was, at best, remote. As the public risk was very remote, the *Betts* court reasoned that the statute bore no *substantial* relation to the public health, safety, morals, or general welfare, and, consequently, was beyond the police power and in conflict with the Fourteenth Amendment to the United States Constitution and Section 1, Article I of the Ohio Constitution.

{¶26} I would find that the statute requiring use of safety belts similarly bears no substantial relation to the public health, safety, morals, or general welfare. I do not find that the possibilities that the use of safety belts could save taxpayer money by preventing long-term care of injured persons at taxpayer expense, or that it could possibly prevent collisions by making it easier for a driver to retain control of his vehicle in an emergency are substantial enough reasons to invoke a proper exercise of the state's police power at the expense of individual liberty.

{¶27} There is no constitutional mandate that the state accept responsibility for the health care of individuals injured by their own actions or inactions.

Therefore, to impose a limitation on individual freedom of action that has not and cannot be scientifically justified is unreasonable. Further, to accept the proposition that the use of safety belts might make it easier for the driver to maintain control of the vehicle during an emergency requires an incredible amount of speculation in which the courts should not engage.

{¶28} As quoted in *Betts*, "'[t]here is too much nonsensical regulation of purely personal affairs in to-day's government. Liberty is almost unknown. You are permitted to take it in homeopathic doses when administered by some commission or court, but what that measure of liberty may be you cannot tell until this court decides. It is high time we were going back to the Constitution, instead of going back on the Constitution.'" 21 Ohio Misc. at 184, quoting *Celina & Mercer Cty. Telephone Co. v. Union-Center Mut. Telephone Assn.* (1921), 102 Ohio St. 487, 523 (Wanamaker, J., dissenting). Interestingly, Judge Riley in 1969 noted the above quote from 1921. What would our predecessors think of our United States today?

{¶29} Finally, I would note that the thoughtful and well-written *Betts* decision related to the statute mandating use of helmets by the operators of motorcycles, which was quickly repealed. Surely any danger of physical injury is much more obvious to motorcyclists than to drivers of automobiles who are surrounded by tons of metal and safety equipment, which today includes air bags. This leads me to the conclusion that, if helmets are not required for motorcyclists,

safety belts should not be required for automobiles; and that such requirements are

politically motivated, not scientifically justified.